Karen Venice Bryan (#0397399)
4621 Snelling Ave, Suite 537
Minneapolis, MN 55406
Tel.: (612) 345-4782 | Fax: (612) 886-3360
Direct: 516-673-8320
karen.bryan@kblawgrp.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Mirriam Chipoka; Tyrone D. Fields, II; and Tyrone D. Fields, III<br><br>                    Plaintiffs,<br><br>vs.<br><br>Jonathan Gale, M.D.; Ryan Dale Symanietz, P.A.; Robert Yost, M.D.; Dr. John Doe; Dr. Jane Roe and Dr. Mary Moe; Abbott Northwestern Hospital; Allina Health Systems; HealthPartners; and Health Partners.<br><br>                    Defendants | Case No.: 20-cv-00765<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW PLAINTIFFS Mirriam Chipoka, Tyrone D. Fields, II and Tyrone D. Fields, III, by and through their undersigned attorney, Karen Venice Bryan, and for their causes of action against the DEFENANTS, and each of them, state the following based upon personal knowledge as to herself and her own actions, otherwise upon and information and belief. And as to all other matters, based on investigation conducted by and through her attorney, which included, a review of PLAINTIFF's Mirriam Chipoka available medical records including the surgical actions which are the subject of this action. PLAINTIFF believes that substantial evidentiary basis exists on its face for the claims set forth herein and in support of this Complaint avers and alleges as follows:

COMPLAINT          JURY TRIAL DEMANDED - 1

**NATURE OF THE ACTION**

1.      This action is brought by a former patient against medical providers for invasion of the right of choice under the concepts of autonomy and personal dignity wherein Defendants removed PLAINTIFF Mirriam Chipoka's (hereinafter "Ms. Chipoka") uterus and cervix without informed consent.

2.      DEFENDANTS did not inform Ms. Chipoka that a hysterectomy was possible, did not obtain Ms. Chipoka's consent to perform a hysterectomy, did not document that a hysterectomy had been performed and did not provide hormone therapy following the hysterectomy.

3.      "The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present." *Cobbs v. Grant*, 8 Cal.3d 229, 239-240 (1972). Because Ms. Chipoka did not consent to the medical treatment performed, DEFENDANTS committed battery.

4.      "However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence." *Cobbs*, 8 Cal.3d at 239-240.

5.      Ms. Chipoka consented to an appendectomy, but DEFENDANTS performed an ileocecectomy without telling Ms. Chipoka that the treatment substantially varied from the consent granted. DEFENDANTS committed medical negligence.

COMPLAINT        JURY TRIAL DEMANDED - 2

6.   DEFENDANTS actions fell below the standard of care required when in performing a CT Guided abdominal drain placement. DEFENDANTs punctured Ms. Chipoka's intensives causing abscess to develop, severe pain and frequent hospitalization.

7.   As a direct result of Respondent's medical malpractice, medical negligence, lack of informed consent, misrepresentation, and battery, Ms. Chipoka has incurred substantial injuries, damages, fees and expenses that could have been avoided.

8.   Ms. Chipoka seeks to recover the damages caused by Respondent's negligent conduct. She has a claim for mental and physical suffering, past, present and future, medical expenses, and all other damages allowable under Minnesota Law.

9.   The martial relationship between Mr. and Ms. Chipoka has been irreversibly damaged as a result of these events. PLAINTIFF Mr. Fields has suffered by the above deviations to his wife's care and has a claim for loss of consortium and mental anguish.

10. Affidavit of review relating to the care and treatment rendered will be provided.

**JURISDICTION**

11.   Jurisdiction over Plaintiff's claim is founded upon 28 U.S.C. § 1331 [federal question jurisdiction] and 28 U.S.C. § 1343(a) [federal civil rights jurisdiction]. In addition, claims for violation of Plaintiffs' rights under the laws and the constitution of the United States are brought pursuant to 42 U.S. C. § 1983. This Court has jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

**VENUE**

12.    Venue is proper pursuant to 28 U.S.C. § § 1391 because at all times relevant, all of the PLAINTIFFS resided in this district and all of the wrongful acts and/or omissions complained of herein occurred in this judicial district.

**PARTIES**

13.    PLAINTIFF MIRIAM CHIPOKA is an individual residing in Hennepin County, Minnesota. Ms. Chipoka was a 48-year-old female who was admitted three times for between December 1, 2015 and February 15, 2016 for ruptured appendicitis. During that time, she had 3 drain placement an ileocecectomy and a hysterectomy. Prior to the incidents alleged herein Petitioner enjoyed generally good physical and sexual health.

14.    PLAINTIFF TYRONE D. FIELDS, II (hereinafter "Mr. Fields") is an individual residing in Hennepin County Minnesota. Mr. Fields is married and resides with his wife, whom he relies on for her financial, emotional and spousal support services.

15.    PLAINTIFF TYRONE D. FIELDS, II (hereinafter "Tyrone") is an individual residing in Hennepin County Minnesota. Tyrone is 15 and resides with his parents including his mother whom he relies on for her maternal services, companionship and guidance.

16.    At all times mentioned herein, DEFENDANT JONATHAN D. GALE, M.D., (hereinafter "Dr. Gale") was and still is an individual duly licensed by the State of Minnesota as a physician and surgeon, and engaged in the practice medicine as a general surgeon with clinical interest in acute care surgery in the City of Minneapolis, County of Hennepin, State of Minnesota and said DEFENDANT is affiliated in some fashion with the other DEFENDANTS named herein. In addition, at all times herein mentioned, Dr. Gale was the

agent and employee of each of the entity DEFENDANTS named below and was acting at all times within the purpose and scope of said agency and employment and acting in concert.

17.     At all times mentioned herein, DEFENDANT RYAN DALE SYMANIETZ, P.A. (hereinafter "Dr. Symanietz") was and still is an individual duly licensed by the State of Minnesota as a physician assistant and engaged in the practice medicine as a physician assistant in the City of Minneapolis, County of Hennepin, State of Minnesota and said DEFENDANT is affiliated in some fashion with the other DEFENDANTS named herein. In addition, at all times herein mentioned, Dr. Symanietz was the agent and employee of each of the entity DEFENDANTS named below and was acting at all times within the purpose and scope of said agency and employment and acting in concert.

18.     At all times mentioned herein, DEFENDANT ROBERT A. YOST M.D., (hereinafter "Dr. Yost") was and still is an individual duly licensed by the State of Minnesota as a physician and engaged in the practice medicine as a radiology specialist in the City of Minneapolis, County of Hennepin, State of Minnesota and said DEFENDANT is affiliated in some fashion with the other DEFENDANTS named herein. In addition, at all times herein mentioned, Dr. Yost was the agent and employee of each of the entity DEFENDANTS named below and was acting at all times within the purpose and scope of said agency and employment and acting in concert.

19.     DEFENDANT JOHN DOE, JANE ROE and MARY MOE are physicians licensed by the State of Minnesota. At all relevant times, DEFENDANT Does, Roes and Moes practiced as a physician assistant and maintained their principal place of business in the City of Minneapolis, County of Hennepin, State of Minnesota. In addition, at all times herein mentioned, DEFENDANTs were the agent and employee of each of the entity

COMPLAINT        JURY TRIAL DEMANDED - 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTs named below and was acting at all times within the purpose and scope of said agency and employment and acting in concert. PLAINTIFF is informed and believes that DEFENDANT Doe, Moe and Roe are individuals and sues them in such individual capacity.

20.     At all times mentioned herein, DEFENDANT ABBOTT NORTHWESTERN HOSPITAL (hereinafter "ANW") was and still is a business association, duly licensed as a hospital and health care provider with the State of Minnesota, with its principal place of doing business in the City of Minneapolis, County of Hennepin State of Minnesota. PLAINTIFF is asserting a professional liability action against this DEFENDANT.

21.     DEFENDANT Allina Health System (hereinafter "Allina") is a professional corporation or other legal entity registered to do business in the State of Minnesota with a registered office and principal place of business at 2925 Chicago Avenue Minneapolis, MN 55407 United States. PLAINTIFF is asserting a professional liability action against this DEFENDANT.

22.     DEFENDANT HEALTHPARTNERS is a professional corporation or other legal entity registered to do business in the State of Minnesota with a registered office and its principal place of doing business in the City of Bloomington, County of Hennepin State of Minnesota. PLAINTIFF is asserting a professional liability action against this DEFENDANT.

23.     PLAINTIFF is informed and believes that DEFENDANTS AHS, HealthPartners and ANW are partnerships, limited partnerships, corporations, and/or other entities of unknown business form, and sues them in such capacity.

24.     Whenever and wherever reference is made in this Complaint to DEFENDANTS, such reference shall include each and every specifically and fictitiously named DEFENDANT individually, jointly, and severally. Upon information and belief, at all times herein mentioned, each of the DEFENDANTs was the agent, employee, and/or partner of, and/or was working in concert with, each of the DEFENDANTs, and in doing the things herein alleged, each was acting within the course and scope of such agency, employment, partnership, and/or concerted activity.

25.     PLAINTIFF is further informed and believes and thereupon alleges that to the extent certain acts and/or omissions were undertaken by certain DEFENDANT(s), each and other every DEFENDANT authorized, consented to, confirmed, and/or ratified each and every such act and/or omission.

26.     The roles, relationships, and capacities of the aforesaid individuals with respect to the defendant business entities, whether as owners, partners, employees, independent contractors, or otherwise, is not known, but plaintiff is informed and believes and based thereon alleges that in doing the acts herein complained of, each herein defendant, including all Doe defendants, was the agent, servant, partner, and employee of all other defendants and was acting within the scope of their authority as such agent, servant, partner, or employee and with the permission and consent of one another.

27.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as John Doe, Jane Roe and Mary Moe, inclusive, and therefore sues these defendants by such fictitious names, and plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and based thereon alleges that each of these fictitiously named defendants is responsible in some manner for the

occurrences herein alleged, and that plaintiff's injuries, damage, and detriment as herein alleged were proximately caused by those defendants.

## FACTUAL BACKGROUND

28.     On December 1, 2015, Ms. Chipoka a married black female with a past medical history for type II diabetes and hypertension was evaluated in the Emergency Room of West Health Surgery Clinic's Emergency Department (hereinafter "WHC") after presenting to WHC emergency department with 6 days of 10/10 tender stabbing pain across the middle of her abdomen, with associated abdominal distension and swelling, persistent nausea vomiting and diarrhea, diaphoresis and intermittent chills.

29.     Ms. Chipoka was 48 years old at the time of the incident. Her medical history included 2 caesarean sections, diabetes and hypertension.

30.     Ms. Chipoka was transferred by emergency medical services and admitted to ANW Hospital. She otherwise appeared in good health. Her physical exam showed that she was oriented to person, place and time and well-developed, well-nourished, in no distress and currently having a menstrual cycle.

31.     Ms. Chipoka was diagnosed with a perforated appendix. A computed tomography (hereinafter "CT") revealed a ruptured appendicitis with right abdominal/pelvic phlegmon and probable ileus.

32.     Given the extensive inflammation consultation was requested with general surgery. CT revealed that she had a 2cm fluid collection not easily accessible and small. Radiology determined that her condition appeared more inflammatory than fluid. General surgery recommended appendectomy in 6-12 weeks to resection appendix.

33.     Multiple uterine masses consistent with fibroids were also detected.

34.     On December 3, 2015, a follow-up CT was conducted. The findings were consistent with a ruptured appendicitis with right abdominal phlegmon. A discrete drainable abscess was not identified.

35.     Her blood pressure was elevated during the hospitalization. An EKG was without acute changes. On December 5, 2019, she had an episode of chest pain and heaviness.

36.     On December 6, 2015, a repeat CT showed an air-fluid collection along the medial aspect of the base of the cecum which does not appear to communicate with the adjacent cecum. In addition, there was an abnormally dilated proximal and mid small bowel, with tapering of the small bowel in the left side of the mid abdomen. This was found to be either related to an ileus or low grade partial small bowel obstruction.

37.     On December 7, 2015 Dr. Robert Yost of Interventional Radiology ("IR") performed a CT guided abdominal drain placement.

38.     DEFENDANTS admitted that during surgery they had inadvertently cut into her intestine when stool seeped into the drain tube.

39.     The drain was replaced, and Ms. Chipoka was discharged on December 9, 2015 with drain in place and scheduled for a follow-up visit with Surgical Specialists of Minnesota.

40.     On December 16, 2015 the right lower quadrant drainage tube was removed. Since then she has developed increasing and worsening lower abdominal pain and has been nauseous and anorexic. The drain was removed on December 19, 2015.

41.     On December 23, 2015 Ms. Chipoka again presented to the emergency department with acutely worsened abdominal pain and was readmitted to ANW for post-op pain and problems.

COMPLAINT        JURY TRIAL DEMANDED - 9

42.     A CT of the abdomen and pelvis revealed recurrent abscesses in the location where the lower quadrant drainage tube had been removed. There was also a smaller abscess inferior to the basis of the cecum that appeared new since the previous exam.

43.     Radiology was consulted and on December 24, 2019 interventional radiology placed a CT-guided drain. On December 28, 2015, a CT-guided drain exchange was performed. On December 29, 2015, the drain fell out and was replaced on December 29, 2015.

44.     Ms. Chipoka was discharged on December 30, 2015 with a follow-up visit with general surgery on December 31, 2015 with a repeat CT-abdomen and eventual surgical goal of interval laparoscopic appendectomy. If this fails, DEFENDANTS would consider right hemicolectomy.

45.     On January 5, 2016 a wet prep genital exam was conducted with no trichomonas, yeast or clue cells seen. A urine test showed that she was not pregnant.

46.     On February 3, 2016 Ms. Chipoka began to have much more severe right abdominal pain with associated nausea, vomiting and loose stools. The differential diagnosis included but was not limited to, recurrent appendicitis, recurrent intra-abdominal abscess, bowel perforation, hernia, hemorrhage, UTI, ureteral stone.

47.     On February 8, 2016, Ms. Chipoka was readmitted to Abbott Northwestern Hospital. The principal diagnosis causing admission was a ruptured appendicitis. Over the days prior to admission she developed increased abdominal pain with emesis. The CT conducted on February 8, 2016 was concerning for signs of worsened appendicitis as well as two new abscesses within the right lower quadrant and left pelvis. In addition, there was

interval increase in the dilation of the appendix and a small focus of air adjacent to the cecum concerning for rupture.

48.     Ms. Chipoka was transferred to ANW for surgery consultation and on February 9, 2016 she underwent laparoscopy—open ileocecectomy. She was discharged on February 15, 2016.

49.     On March 6, 2020 Ms. Chipoka visited her primary care physician for a pap smear test. Dr. Nadia Malik informed her that she had no uterus or cervix.

50.     Mrs. Chipola uterus, cervix, possible fallopian tubes and perhaps ovaries were removed without her being properly informed or counseled by DEFENDANTS on the effects of removing her ovaries and receiving hormone replacement therapy.

51.     Ms. Chipoka underwent surgery without her consent in a non-emergency situation.

52.     In addition, there was no consent for blood products for this invasive surgical procedure. DEFENDANTS never offered a hysterectomy to Ms. Chipoka and Ms. Chipoka did not need or want a hysterectomy and a hysterectomy is not documented in Ms. Chipoka's medical history. However, her primary care physician has determined that she has no uterus or cervix.

53.     DEFENDANTS had Ms. Chipoka sign consents for an appendectomy. DEFENDANTS did not document the reason why Ms. Chipoka was given a hysterectomy. Ms. Chipoka was in a completely stable condition and did not require emergency surgery. This is evident by her vital signs as well as DEFENDANTS documentation of her physical condition including that of her uterus, cervix, left fallopian tube and ovary.

54.     Due to the above deviations, Ms. Chipoka was put into early menopause and has developed among other ailments irritable bowel syndrome.

## CAUSE OF ACTION

### COUNT I
**(Professional Negligence
Medical Malpractice
Against all DEFENDANTS)**

55.     PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

56.     In 2015 and 2016 Petitioner was hospitalized at ANW hospital for a ruptured appendix. At all relevant time DEFENDANTS held themselves out to the public to be knowledgeable, experienced, skilled and competent with respect to surgery procedures, intestinal medical care and treatment.

57.     Between December 1, 2019 and February 15, 2019 DEFENDANTS undertook the care and treatment of PLAINTIFF, rendered professional medical services to her, and owed PLAINTIFF a duty to use the level of skill, knowledge, and care in their diagnosis and treatment of her that other reasonably careful medical practitioners would use in the same or similar circumstances.

58.     As a surgeon providing medical care to PLAINTIFF, Defendants Dr. Gale, Dr. Symanietz and Dr. Yost had a duty to perform any medical procedures with the reasonable degree of care that is recognized by physicians and surgeons under similar circumstances. Defendant's duties included but were not limited to 1) a duty to obtain informed consent from PLAINTIFF that Defendant was going to operate on PLAINTIFF's reproductive organs 2) a duty to remove PLAINTIFF's ruptured appendix, pursuant to her consent; 3) a duty to

inform PLAINTIFF that Defendant had in fact removed PLAINTIFF's uterus and cervix and 4) a duty to not perform any procedures that were unnecessary.

59.     Between December 1, 2019 and February 15, 2016, in rendering professional medical services to PLAINTIFF, DEFENDANTS negligently failed to exercise the requisite degree of knowledge, skill, and care, all in violation of the applicable standard of care.

60.     DEFENDANTS' acts of negligence in violation of the standard of care include but are not limited to surgically removing healthy organs from PLAINTIFF's body, including her uterus and cervix, when the removal of those organs was not indicated by PLAINTIFF's medical condition.

61.     At all relevant times DEFENDANTS AHS, HealthPartners and ANW hospital held themselves out as skilled medical providers who has the experience and expertise in surgery and intestine treatment and procedures.

62.     At all relevant times DEFENDANTS deviated from the acceptable minimum standard of care for surgeons and medical providers when they removed Ms. Chipoka's uterus, cervix and possible ovaries and perhaps fallopian tubes without her knowledge or consent and without documenting that they had done so.

63.     DEFENDANTS deviated from the standard of care as evidenced by the following: 1) DEFENDANTS failed to inform Ms. Chipoka of the removal of her uterus and cervix and the need for hormone replacement. Mrs. Chipoka was discharged home on February 15, 2016 without hormone therapy. 2) Ms. Chipoka was never given the opportunity to explore other surgical or medical alternatives the only surgical option DEFENDANTS gave Ms. Chipoka was a total hysterectomy. Therefore, Ms. Chipoka was denied information necessary for her to make a well-informed decision regarding her

treatment. 3) DEFENDANTS did not obtain Ms. Chipoka consent for a hysterectomy. Thus Ms. Chipoka did not understand the risks, benefits, and complications regarding a hysterectomy. 4) DEFENDANTS did not properly educate and counsel Ms. Chipoka about the important consequence of hysterectomy.

64.     As a direct and proximate result of DEFENDANTS' medical and/or professional negligence, Ms. Chipoka has sustained, and will continue to sustain, injury to her person, all to her damage in a sum within the jurisdiction of this Court and to be shown according to proof at trial.

65.     As a further direct and proximate result of DEFENDANTS' medical and/or professional negligence. She has been required to employ the services of hospitals, physicians, surgeons, nurses and other professionals, in an attempt to remedy the damage and injury caused by DEFENDANTS' negligence.

66.     PLAINTIFF has been compelled to incur expenses for such treatment, medicines, and other medical supplies and services.

67.     PLAINTIFF is informed and believes, and thereon alleges, that further services of said nature will be required by her in the future in an amount to be shown according to proof at trial.

68.     As a further direct and proximate result of DEFENDANTS' medical and/or professional negligence, PLAINTIFF has sustained, and will continue to sustain, past and future physical and emotional injuries and past and future economic and non-economic damages including but not limited to: (i) past and future physical pain and suffering, (ii) past and future emotional pain, distress, frustration, annoyance, anger, fear, worry, embarrassment, discomfort and loss of enjoyment of life; (iii) past and future wage loss; (iv)

past and future medical, therapy and attendant care expenses, and (v) all other past and future economic and non-economic damages allowed by law, all in amounts to be shown according to proof at trial.

69.     The amount of PLAINTIFF's claim is presently undetermined, but will include, at a minimum, all past and future economic damages allowed by law, all past and future non-economic damages allowed by law, costs of suit, and interest as provided by law, including but not limited to, pre and post-judgment interest and punitive damages.

## COUNT II

**(Professional Negligence
Failure to Obtain Informed Consent
Against all DEFENDANTS)**

70.     PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

71.     In rendering professional medical services to PLAINTIFF during December 1, 2015 and February 15, 2016, DEFENDANTS failed to exercise the requisite degree of knowledge, skill, and care, by negligently failing to obtain Ms. Chipoka's informed consent to surgically remove her uterus, and cervix, all in violation of the applicable standard of care.

72.     Specifically, on or about February 9, 2016, DEFENDANTS surgically removed PLAINTIFF's uterus, and cervix. Prior to performing this procedure, DEFENDANTS failed to: (i) tell PLAINTIFF that he would be removing her uterus, and cervix (ii) explain to PLAINTIFF whether removal of her uterus, and cervix was medically necessary (iii) explain to PLAINTIFF less drastic and less invasive alternatives to the procedure which was in fact performed, including but not limited to beginning with a laparoscopic procedure to excise any growth on her ovaries to determine whether such growth was cancerous prior to complete removal of her uterus, and her cervix; (iv) explain alternative approaches if it

turned out there was an uterine growth and that the growth was in fact malignant; (v) explain alternative approaches if it turned out there was an uterine growth and the uterine growth was benign; (vi) explain the effects of the procedure performed on vaginal length, sexual functioning and menopause; (vii) give PLAINTIFF any information she needed to make an informed decision, including the risks that a reasonable person would consider important in deciding whether to have a proposed treatment or procedure; (viii) give PLAINTIFF the information skilled practitioners would disclose to the patient under the same or similar circumstances; (ix) tell PLAINTIFF that he would be removing her uterus, and cervix regardless of whether he determined the uterine fibroids was cancerous or not; or (x) otherwise disclose to PLAINTIFF the risks or benefits of the procedure and the alternatives thereto.

73.     Accordingly, PLAINTIFF did not give her informed consent for the surgical removal of her uterus, and cervix by DEFENDANTS on or about February 15, 2016.

74.     The reasonable person in PLAINTIFF's position would not have agreed to the subject procedure after being fully informed of the risks or benefits of, and the alternatives to, said procedure.

75.     PLAINTIFF was harmed and injured by a result or risk that DEFENDANTS should have explained before performing the procedure.

76.     DEFENDANTS' negligent failure to obtain PLAINTIFF's informed consent violated the applicable standard of care.

77.     As a direct and proximate result of DEFENDANTS' medical and/or professional negligence, PLAINTIFF has sustained, and will continue to sustain, injury to her person, all

to her damage in a sum within the jurisdiction of this Court and to be shown according to proof at trial.

78.     As a further direct and proximate result of DEFENDANTS' medical and/or professional negligence, PLAINTIFF has been required to employ the services of hospitals, physicians, surgeons, nurses and other professionals, in an attempt to remedy the damage and injury caused by DEFENDANTS' negligence.

79.     PLAINTIFF has been compelled to incur expenses for such treatment, medicines, and other medical supplies and services. PLAINTIFF is informed and believes, and thereon alleges, that further services of said nature will be required by her in the future in an amount to be shown according to proof at trial.

80.     As a further direct and proximate result of DEFENDANTS' medical and/or professional negligence, PLAINTIFF has sustained, and will continue to sustain, past and future physical and emotional injuries and past and future economic and non-economic damages including but not limited to: (i) past and future physical pain and suffering, (ii) past and future emotional pain, distress, frustration, annoyance, anger, fear, worry, embarrassment, discomfort and loss of enjoyment of life; (iii) past and future wage loss; (iv) past and future medical, therapy and attendant care expenses, and (v) all other past and future economic and non-economic damages allowed by law, all in amounts to be shown according to proof at trial.

81.     The amount of PLAINTIFF's claim is presently undetermined, but will include, at a minimum, all past and future economic damages allowed by law, all past and future non-economic damages allowed by law, costs of suit, and interest as provided by law, including but not limited to, pre and post-judgment interest and punitive damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# COUNT III

### (Informed Consent
### Medical Battery
### Against Dr. Gale, Dr. Symanietz, Dr. Yost, Dr. Doe, Dr. Roe and Dr. Moe

82.     PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

83.     Prior to the February 9, 2016 surgery. PLAINTIFF consented to the removal of her appendix on the condition it was ruptured and causing her pain and injury.

84.     PLAINTIFF never consented to the removal of her uterus, cervix, possibly both ovaries and fallopian tube.

85.     Additionally, prior to the subject surgery, DEFENDANTS requested and were given consent to operate on PLAINTIFF's compromised appendix not her healthy organs. DEFENDANTS actions constitute medical assault and battery.

86.     To prevail on a medical battery, claim under Minnesota law, Plaintiff must establish either (1) that he did not consent to the medical treatment performed, or (2) that the treatment substantially varied from the consent granted. *See Cornfeldt v. Tongen*, 262 N.W.2d 684, 699 (Minn. 1977) ("An action for battery is appropriate where the treatment consists of a touching that is of a substantially different nature and character from that to which the plaintiff consented."); *Kohoutek v. Hafner*, 383 N.W.2d 295, 299 (Minn. 1986) ("In battery cases, . . . the question is whether the physician, in fact, told the patient of the nature and character of the procedure and the patient consented to that procedure."); *McCollar v. Mayo Clinic,* 1997 WL 714743, *1 (Minn. Ct. App. Nov. 18, 1997) (listing elements of *prima facie* medical battery claim); *K.A.C. v. Benson,* 527 N.W.2d 553, 561 (Minn. 1995).

COMPLAINT          JURY TRIAL DEMANDED - 18

87.     PLAINTIFF did not consent to have a "a small umbilical hernia dissected". In addition, PLAINTIFF did not give consent to have DEFENDANT's "inspect [her] uterus, the left ovary and fallopian tube" in direct violation of 21 C.F.R. § 50.1 through 21 C.F.R. § 50.27 and 45 C.F.R. § 46.101 through 45 C.F.R. § 46.124; *see also Mohr v. Williams*, 95 Minn. 261, 104 N.W. 12 (1905).

88.     In direct violation of PLAINTIFF's conditional consent and instructions to remove unhealthy organs, DEFENDANTS negligently, carelessly, recklessly, and intentionally removed PLAINTIFF's heathy uterus, cervix, possibly ovaries and fallopian tube "which showed no sign of abnormality" and despite the fact that the surgery PLAINTIFF agreed to was appendectomy (the surgical removal of the appendix) and possible a ileocecectomy (the surgical removal of the ileum and part of the colon) all in violation of the applicable standard of care.

89.     The lack of any consent at all makes Ms. Chipoka's claim an issue of medical battery, not medical malpractice. Minn. Stat. § 145.682; 42 U.S.C § 1983.

90.     Further, DEFENDANTS intended to remove PLAINTIFF's uterus, cervix possible ovaries and fallopian tubes with knowledge that an appendectomy is an emergency surgery that's performed to treat appendicitis, an inflammatory condition of the appendix. This constitutes medical battery.

91.     PLAINTIFF provided consent for surgery to address problems with her intestines, which are part of her digestive system, and Drs. Gale and Symanietz removed PLAINTIFF's perfectly healthy uterus, cervix, possible fallopian tube and perhaps ovary, which were part of her reproductive system. Dr. Gale and Dr. Symanietz clearly had no consent to cut into PLAINTIFF's healthy reproductive organs.

92.     Dr. Gale and Dr. Symanietz performed an operation to which PLAINTIFF did not consent. They committed a battery.

93.     PLAINTIFF consented to surgery to address problems with her intestines and Dr. Gale and Symanietz removed her healthy uterus cervix and perhaps her fallopian tube ovary. PLAINTIFF did not give her informed consent to the hysterectomy procedure or any type of offensive bodily contact which the procedure required.

94.     Despite the lack of PLAINTIFF's consent, DEFENDANT made offensive bodily contact on PLAINTIFF's person.

95.     In addition, PLAINTIFF did not consent to any surgical intervention that could result in injury or excision of her uterus and cervix. DEFENDANTS committed a medical battery upon PLAINTIFF by the exploration of her uterus and cervix and total removal of her uterus and cervix and perhaps fallopian tube and possible ovaries.

96.     Furthermore, defendant committed a battery by performing any surgical intervention including but not limited to a removal of the cervix and uterus compromising her fertility. PLAINTIFF suffered damages as a result of this offensive, bodily contact.

97.     PLAINTIFFs cause of action for battery seeks recovery of all damages PLAINTIFF has suffered as a result of Drs. Gale and Symanietz's removal of PLAINTIFF's healthy uterus, cervix possibly fallopian tubes and perhaps ovaries for which he had no consent.

98.     Additionally, DEFENDANTS negligently, carelessly, recklessly, and intentionally removed PLAINTIFF's uterus, cervix and perhaps ovaries and fallopian tubes without her consent, all in violation of the applicable standard of care.

99.     DEFENDANTS unpermitted, unprivileged, intentional contact with PLAINTIFF's person was an invasion of the right of choice under the concepts of autonomy and personal dignity.

100.    As a direct and proximate result of DEFENDANTS' medical and/or professional willful, deliberate and intentional conduct, PLAINTIFF has sustained, and will continue to sustain, injury to her person, all to her damage in a sum within the jurisdiction of this Court and to be shown according to proof at trial.

101.    As a further direct and proximate result of DEFENDANTS' medical and/or professional willful, deliberate and intentional conduct, PLAINTIFF has been required to employ the services of hospitals, physicians, surgeons, nurses and other professionals, in an attempt to remedy the damage and injury caused by DEFENDANTS' negligence.

102.    PLAINTIFF has been compelled to incur expenses for such treatment, medicines, and other medical supplies and services. PLAINTIFF is informed and believes, and thereon alleges, that further services of said nature will be required by her in the future in an amount to be shown according to proof at trial.

103.    As a further direct and proximate result of DEFENDANTS' medical and/or professional willful, deliberate and intentional conduct, PLAINTIFF has sustained, and will continue to sustain, past and future physical and emotional injuries and past and future economic and non-economic damages including but not limited to: (i) past and future physical pain and suffering, (ii) past and future emotional pain, distress, frustration, annoyance, anger, fear, worry, embarrassment, discomfort and loss of enjoyment of life; (iii) past and future wage loss; (iv) past and future medical, therapy and attendant care expenses,

and (v) all other past and future economic and non-economic damages allowed by law, all in amounts to be shown according to proof at trial.

104.     The amount of PLAINTIFF's claim is presently undetermined, but will include, at a minimum, all past and future economic damages allowed by law, all past and future non-economic damages allowed by law, costs of suit, and interest as provided by law, including but not limited to, pre and post-judgement interest and punitive damages.

## COUNT IV

### (Professional Negligence
### Intentional Misrepresentation
### Against all DEFENDANTS)

105.     PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

106.     On December 3, 2015, DEFENDANT Dr. Robert Yost conducted a routine CT guided abdominal drain placement. During the procedure, Dr. Yost negligently punctured PLAINTIFF's intestines, which necessitated another routine CT guided abdominal drain placement and subsequent surgery to replace the damage. Defendants did not inform PLAINTIFF of the kind of surgery that was performed.

107.     Subsequently, PLAINTIFF was hospitalized on several occasions due to small bowel obstruction caused by the scaring which resulted from the damage to Plaintiffs' intestines. On December 9, 2019 PLAINTIFF provided DEFENDANTS consent for appendectomy removal of PLAINTIFF's ruptured appendix.

108.     Dr. Gale and Dr. Symanietz did not inform PLAINTIFF that they would be performing an ileocecectomy and a hysterectomy and did not obtain PLAINTIFF's consent for either surgery.

COMPLAINT          JURY TRIAL DEMANDED - 22

109.     Dr. Gale and Dr. Symanietz removed Plaintiff's healthy uterus and cervix, perhaps fallopian tube and possibly ovary and then lied to PLAINTIFF by claiming that he had only taken out her ruptured appendix.

110.     Dr. Gale and Dr. Symanietz removed a section of PLAINTIFF's colon and then lied to PLAINTIFF that he had only removed her ruptured appendix.

111.     Dr. Gale and Dr. Symanietz removed a benign umbilical hernia and then lied to PLAINTIFF that he had only removed her ruptured appendix. The procedures performed were substantially different from an appendectomy and constitute a medical battery.

112.     Prior to and during the period of time referred to herein, Dr. Gale and Dr. Symanietz held themselves out as a skilled general surgeon and represented that he was a medical doctor, competent to perform services for PLAINTIFF as others.

113.     Defendant was a licensed member of the Minnesota State Medical Association at all times pertinent to this action.

114.     PLAINTIFF relied on DEFENDANT's representations. Dr Gale and Dr. Symanietz owed PLAINTIFF a duty to provide medical services under a standard of care commensurate with the prevailing standard of care in the medical community at the time and place that the services were provided.

115.     Dr. Gale and Dr. Symanietz failed to provide services to PLAINTIFF at the level of the standard of care required.

116.     The failure to obtain consent for the actual surgery performed, failure to inform PLAINTIFF of the injury caused on December 3, 2015 and failure to disclose the fact he performed an ileocecectomy and an hysterectomy on February 9, 2016, constituted fraud

in the inducement, intentional misrepresentation by the reckless representation to PLAINTIFF that he would only have an appendectomy.

117.     Dr. Gale and Dr. Symanietz took matters into their own hands and made a decision for PLAINTIFF to exceed the scope of his uninformed consent. Dr. Gale and Dr. Symanietz had a duty to inform PLAINTIFF of any findings they discovered during the course of surgery.

118.      They were obligated to inform PLAINTIFF whether they had located a cancerous tumor and had removed the hematoma and her uterus and cervix but failed to do so.

119.     DEFENDANT had duty to disclose material facts to PLAINTIFF because DEFENDANT had special knowledge of material facts to which PLAINTIFF did not have access to.

120.     Specifically, DEFENDANT had a duty to disclose to PLAINTIFF that he had extracted the uterus and cervix because DEFENDANT had special knowledge that he had in fact extracted the uterus and cervix which was healthy, and PLAINTIFF did not have access to such information.

121.     DEFENDANTS made false representations to PLAINTIFF of past or present material facts that were susceptible of knowledge.

122.     DEFENDANTS also failed to disclose to PLAINTIFF material facts that Defendant had a duty to disclose to PLAINTIFF and of which Defendant had special knowledge, In particular, that Defendant informed PLAINTIFF that he had extracted the appendix which PLAINTIFF gave her informed consent to, when in fact Defendant had extracted her uterus and cervix which was not injured.

COMPLAINT        JURY TRIAL DEMANDED - 24

123.      DEFENDANTS failed to disclose to PLAINTIFF that he had in fact extracted the

incorrect organ. DEFENDANTS knew at the time they made them that their

representations and/or omissions were false.

124.      DEFENDANTS made the false representations and/or omissions with the intent to

induce PLAINTIFF to act in reliance upon them, or under circumstances where

PLAINTIFF was justified in relying upon them and did do induce PLAINTIFF.

125.      PLAINTIFF believed said representations and relied and acted upon them by,

among other things, leaving DEFENDANT's care without any objection and with over a

$150,000 in medical bills.

126.      As a direct and proximate result of DEFENDANT's false representations and

PLAINTIFF's reliance thereon, PLAINTIFF was damaged in an amount to be proved at

trial. As a direct result of DEFENDANT's medical malpractice and misrepresentation,

PLAINTIFF has incurred substantial injuries, fees and expenses that could have been

avoided.

127.      As a direct and proximate result of DEFENDANTS' medical and/or professional

negligence, PLAINTIFF has sustained, and will continue to sustain, injury to her person,

all to her damage in a sum within the jurisdiction of this Court and to be shown according

to proof at trial.

128.      As a further direct and proximate result of DEFENDANTS' medical and/or

professional negligence, PLAINTIFF has been required to employ the services of

hospitals, physicians, surgeons, nurses and other professionals, in an attempt to remedy

the damage and injury caused by DEFENDANTS' negligence.

129.     PLAINTIFF has been compelled to incur expenses for such treatment, medicines, and other medical supplies and services. PLAINTIFF is informed and believes, and thereon alleges, that further services of said nature will be required by her in the future in an amount to be shown according to proof at trial.

130.     As a further direct and proximate result of DEFENDANTS' medical and/or professional negligence, PLAINTIFF has sustained, and will continue to sustain, past and future physical and emotional injuries and past and future economic and non-economic damages including but not limited to: (i) past and future physical pain and suffering, (ii) past and future emotional pain, distress, frustration, annoyance, anger, fear, worry, embarrassment, discomfort and loss of enjoyment of life; (iii) past and future wage loss; (iv) past and future medical, therapy and attendant care expenses, and (v) all other past and future economic and non-economic damages allowed by law, all in amounts to be shown according to proof at trial.

131.     The amount of PLAINTIFF's claim is presently undetermined, but will include, at a minimum, all past and future economic damages allowed by law, all past and future non-economic damages allowed by law, costs of suit, and interest as provided by law, including but not limited to, pre and post-judgment interest and punitive damages.

### COUNT V

**(Breach of Contract
Against all DEFENDANTS)**

132.     PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein. On or about December 1, 2015, PLAINTIFF suffered severe abdominal pains.

133.     PLAINTIFF received treatment at the emergency room at WHC and was

transferred to ANW. Between December 1, 2015 and February 15, 2016, PLAINTIFF

and DEFENDANTs entered into an agreement whereby DEFENDANTS would provide

certain medical services as a medical provider to PLAINTIFF.

134.     Dr. Gale was a medical doctor licensed to practice medicine in the State of

Minnesota. PLAINTIFF and DEFENDANTS Agreed that PLAINTIFF will operate on

PLAINTIFF's appendix with the oversight of ANW, Allina and HealthPartners.

135.     While PLAINTIFF was incapacitated by anesthesia, DEFENDANT beached this

contractual agreement with PLAINTIFF by removing PLAINTIFF's uterus and cervix.

136.     At no time did PLAINTIFF give informed consent to the complete removal of her

uterus and cervix nor did DEFENDANTs ever discuss the possibility or the necessity of a

hysterectomy with PLAINTIFF.

137.     According to the DEFENDANT's Operative Report, DEFENDANTs did not

inform or counsel PLAINTIFF as to the risks and benefits of surgery.

138.     PLAINTIFF was never informed that hysterectomy was or could be considered by

the DEFENDANT, and PLAINTIFF never consented to undergo a hysterectomy.

139.     As a result of DEFENDANTs negligent acts during surgery, PLAINTIFF's has

entered early menopause and her sexual organs does not function correctly and causes

PLAINTIFF constant pain and suffering.

140.     Further, DEFENDANTs did not admit that he removed PLAINTIFFs uterus and

cervix without PLAINTIFFs knowledge or her consent. The removal of PLAINTIFF's

uterus and cervix was not necessary according to the operative report.

141.    DEFENDANT's Operative Report makes no mention that PLAINTIFF ever gave informed consent as to the removal of her uterus and cervix or resulting early menopause.

142.    The actions of DEFENDANT amount to breach of contract and failure to give and/or obtain informed consent.

143.    In similar situations, other surgeons would have removed the organ for which they were given informed consent, informed the patient of their failure to extract the defective organ, obtained informed consent prior to performing a removal and would have extracted the clearly ruptured appendix.

144.    Because PLAINTIFF has only two children and was still having her menstrual cycle the loss of her uterus and cervix caused severe damage to PLAINTIFF's life. DEFENDANTs, through willful and wanton misconduct as set forth herein, caused the damages to PLAINTIFF, including but not limited to necessitating future surgical intervention.

145.    The complete loss of PLAINTIFFs uterus caused PLAINTIFF to be damaged in the amount to be established at the time of trial.

146.    PLAINTIFF has been compelled to incur expenses for such treatment, medicines, and other medical supplies and services.

147.    PLAINTIFF is informed and believes, and thereon alleges, that further services of said nature will be required by her in the future in an amount to be shown according to proof at trial.

148.    As a further direct and proximate result of DEFENDANTS' medical and/or professional negligence, PLAINTIFF has sustained, and will continue to sustain, past and future physical and emotional injuries and past and future economic and non-economic

damages including but not limited to: (i) past and future physical pain and suffering, (ii) past and future emotional pain, distress, frustration, annoyance, anger, fear, worry, embarrassment, discomfort and loss of enjoyment of life; (iii) past and future wage loss; (iv) past and future medical, therapy and attendant care expenses, and (v) all other past and future economic and non-economic damages allowed by law, all in amounts to be shown according to proof at trial.

149.    The amount of PLAINTIFF's claim is presently undetermined, but will include, at a minimum, all past and future economic damages allowed by law, all past and future non-economic damages allowed by law, costs of suit, and interest as provided by law, including but not limited to, pre and post-judgment interest.

## COUNT VI

### (Vicarious Liability
### Against DEFENDANTS
### Allina Health, Abbott Northwestern and HealthPartners)

150.    PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

151.    DEFENDANTS ALLINA, HealthPartners and ANW hospital negligently informed PLAINTIFF of the risks of surgery, negligently diagnosed PLAINTIFF, negligently advised PLAINTIFF, negligently performed surgery on PLAINTIFF, negligently treated PLAINTIFF after surgeries, negligently supervised employees, negligently used and maintained equipment, and so negligently cared for PLAINTIFF in other ways that defendants breached the duty to use due care in treating PLAINTIFF.

152.    PLAINTIFF was diagnosed with appendicitis on December 1, 2015. PLAINTIFF was referred to defendant ANW for an evaluation of her appendix on December 1, 2019.

DEFENDANT Allina, HealthPartners and ANW hospital negligently performed a medical procedure without informed consent and without proper monitoring. As a result of the procedure performed PLAINTIFF was severely and permanently injured.

153.     The care provided by DEFENDANTS was below the standard of care of competent physicians and medical providers.

154.     As a proximate result of said negligence of the DEFENDANTs, and each of them, PLAINTIFF was hurt and injured in PLAINTIFF's health, strength and activity sustaining injury to PLAINTIFF's body, and shock and injury to PLAINTIFF's nervous system and person, all of which said injuries have caused and continue to cause PLAINTIFF great mental, physical and nervous pain and suffering in an amount to be determined and according to proof, within the jurisdiction of this Court.

155.     As further proximate result of the said negligence by the DEFENDANTs, and each of them, PLAINTIFF was prevented from attending to PLAINTIFF's usual occupation for a period of time and suffered economic damages in an amount according to proof, within the jurisdiction of this Court.

156.     As further proximate result of the said negligence of the DEFENDANTs, and each of them, PLAINTIFF was required to and will need to employ physicians and surgeons to examine, treat, and care for her and PLAINTIFF did and will incur medical and incidental expenses in an amount to be determined according to proof.

157.     As a result of the surgery negligently performed by DEFENDANTs, PLAINTIFF has suffered severe physical and emotional injuries including but not limited to total removal of her uterus and cervix and possibly her fallopian tubes and ovaries, irritable bowel syndrome and complex regional pain syndrome.

158.     DEFENDANTS negligent conduct has caused pain and suffering, inconvenience, mental anguish, emotional distress, fear of injury, and other non-pecuniary loss, in addition, PLAINTIFF has incurred extensive medical bills.

159.     All of the acts alleged to have been done or not to have been done by DEFENDANTS Allina Health Systems, Abbott Northwestern Hospital and HealthPartners and Doe were done or not done by said DEFENDANTs, their agents, servants and/or employees acting within the course and scope of their employment and on behalf of said DEFENDANTs.

160.     At all times relevant hereto, individual DEFENDANTS were actual, apparent agent or ostensible agent, servant and/or employee of DEFENDANTS entities and or hospital and or health systems and or health partners.

161.     At all times relevant hereto, DEFENDANTs Allina, ANW and HealthPartners were acting through their agents and ostensible agents, servants, and/or employees who were engaged in the business of providing medical care and were, at all times relevant hereto, acting in the course and scope of their employment duties and authority.

162.     The complete loss of PLAINTIFF's uterus caused PLAINTIFF to be damaged in the amount to be established at the time of trial.

163.     PLAINTIFF has been compelled to incur expenses for such treatment, medicines, and other medical supplies and services.

164.      PLAINTIFF is informed and believes, and thereon alleges, that further services of said nature will be required by her in the future in an amount to be shown according to proof at trial.

165.     As a further direct and proximate result of DEFENDANTS' medical and/or professional negligence, PLAINTIFF has sustained, and will continue to sustain, past and future physical and emotional injuries and past and future economic and non-economic damages including but not limited to: (i) past and future physical pain and suffering, (ii) past and future emotional pain, distress, frustration, annoyance, anger, fear, worry, embarrassment, discomfort and loss of enjoyment of life; (iii) past and future wage loss; (iv) past and future medical, therapy and attendant care expenses, and (v) all other past and future economic and non-economic damages allowed by law, all in amounts to be shown according to proof at trial.

166.     The amount of PLAINTIFF's claim is presently undetermined, but will include, at a minimum, all past and future economic damages allowed by law, all past and future non-economic damages allowed by law, costs of suit, and interest as provided by law, including but not limited to, pre and post-judgment interest.

## COUNT VII

**(Professional Negligence**
**Failure to Supervise and Negligent Hiring Against**
**DEFENDANTs Allina Health, Abbott Northwestern and Doe entities)**

167.     PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

168.     At all times material, DEFENDANTS owed PLAINTIFF a duty to exercise that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, was recognized as acceptable and appropriate by reasonably careful physicians caring for a patient such as Ms. Chipoka.

169.     On or between December 1, 2015 through February 16, 2016, DEFENDANTS care fell below the accepted and/or applicable standard of care in the treatment of Ms. Chipoka in one or more of the following ways: a. By removing PLAINTIFFs cervix during a normal appendix procedure; b. Failing to possess the experience, training, expertise and care required of a specialist; c. In failing to utilize the proper and appropriate technique required for an appendix surgery; d. Failing to meet the standard of care required of a specialist; e. Holding out expertise which induced PLAINTIFF to believe that adequate and proper care was provided when, in fact, adequate, proper and reasonable care was not provided; f. In acting with reckless disregard/indifference to the health and welfare of PLAINTIFF by removing a normal and healthy cervix and uterus. g. In increasing the risk of future harm to PLAINTIFF, including but not limited to, the need for both additional surgery and/or hormone therapy; and h. In failing to inform PLAINTIFF of the risk associated with the proposed surgery.

170.     The injuries, damages and losses suffered by PLAINTIFF, as fully hereinafter set forth, were the direct and proximate result of the negligence, carelessness and breach of acceptable medical standards of care on the part of the DEFENDANTS, their agents, servants, and/or employees.

171.     Said conduct of DEFENDANTs amounts to reckless disregard and/or indifference to an obvious departure from the standard of care with gross indifference to PLAINTIFFs health and well-being.

172.     As a direct and proximate result of the negligence, carelessness, and breach of the acceptable standard of care on the part of the DEFENDANTs, their agents, servants and/or employees, all of which substantially increased the risk of harm to PLAINTIFF.

173.      PLAINTIFF sustained and/or will sustain the following damages: a PLAINTIFF was left without a uterus and cervix b. PLAINTIFF was left with early menopause. c. PLAINTIFF will require additional future surgery; d. PLAINTIFF experienced extended and extreme pain, suffering and emotional distress; e. PLAINTIFF will require hormone therapy; f. PLAINTIFF experienced and continues to experience humiliation, embarrassment and such other damages as are permitted by law; g. PLAINTIFF incurred unnecessary medical bills, mental anguish and upset; h. PLAINTIFF has incurred a loss of income past, present and future; i. PLAINTIFF has incurred a loss of economic horizons; j. PLAINTIFF has a permanent impairment k. PLAINTIFF will incur future medical expenses; l. Future pain, suffering, and emotional distress; m. Past, present and future loss of life's pleasures; n. Other damages recoverable pursuant to Minnesota law.

174.      PLAINTIFF demands judgment against all DEFENDANTs, jointly and severally, for compensatory and punitive damages in an amount to be determined upon proof, interest, the costs of this action, attorney fees and such other and further relief to which PLAINTIFFs are entitled as determined by this Court.

## COUNT VIII

### Professional Negligence/Medical Battery
### Against DEFENDANTS Allina Health and Abbott Northwestern

175.      PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

176.      "A claim of battery lies against a physician who performs a medical procedure on a patient without his or her consent." *Kohoutek v. Hafner*, 383 N.W.2d 295, 298 (Minn.1986) (citing Mohr v. Williams, 104 N.W. 12 (Minn.1905)). A claim of battery in

the medical context has two elements: performance of a medical procedure and a lack of consent to that procedure.

177.     On or about December 1, 2015, PLAINTIFF presented to WHC with complaints of abdominal pain. WHC referred PLAINTIFF to Abbot Northwestern hospital for an examination. The examination revealed a rupture appendix. This same examination noted PLAINTIFFs uterus and cervix to be within normal range.

178.     The individual DEFENDANTS removed PLAINTIFFS uterus, cervix and perhaps fallopian tubes and ovaries without PLAINTIFFS knowledge and consent.

179.     Medical providers are bound to disclose risks which a reasonable person would consider material to a decision whether or not to undergo treatment and/or testing.

180.     Dr. Gale, Symanietz and Yost are and/or were agents, ostensible agents, servants and/or employees of DEFENDANTS Allina Health, HealthPartners and ANW hospital or apparent agents held out as such.

181.     At all times material hereto, DEFENDANTS were acting in the scope of their employment as agents, ostensible agents, servants, and/or employees of entity DEFENDANTS. DEFENDANTs Allina Health, HealthPartners and ANW hospital are vicariously liable for the acts and commissions or omissions of Drs Gale, Symanietz and Yost fully as though the aforementioned acts, and/or omissions were performed by DEFENDANTs Allina Health System, HealthPartners and/or Abbott Northwestern Hospital themselves.

182.     DEFENDANTS and/or DEFENDANT's agents, servants, and/or employees did not explain the risks, complications, alternatives, and seriousness of the surgery to remove an appendix.

COMPLAINT        JURY TRIAL DEMANDED - 35

183.     Specifically, DEFENDANTS and/or their agents, servants, and/or employees

failed to disclose the possibility of the removal of PLAINTIFF's uterus and cervix.

184.     The procedure involved undisclosed risks and the harm occurred which a

reasonable patient would have considered a substantial factor in determining whether or

not to undergo or reject the surgery. There was no proper informed consent to remove

PLAINTIFF's uterus and cervix from PLAINTIFF to DEFENDANTS prior to the

surgery performed on February 9, 2016.

185.     PLAINTIFF was not given proper informed consent regarding the nature of the

proposed procedure and the risks and alternatives that a reasonably prudent patient would

consider material to the decision whether or not to undergo surgery to repair her

appendix.

186.     DEFENDANTS reviewed PLAINTIFF's CT scan and/or the report from the

radiologist who read PLAINTIFF's MRI films, prior to surgery and knew her uterus and

cervix to be intact.

187.     DEFENDANTS knew that PLAINTIFF was scheduled to have surgery to repair

her appendix.

188.     DEFENDANTS knew that removal of PLAINTIFF's uterus was not necessary,

nor was an accepted risk of the appendix surgery to repair PLAINTIFF's ruptured

appendix.

189.     DEFENDANT's actions or inactions to properly inform PLAINTIFF of options,

alternatives, and consequences of the surgery were a substantial factor in PLAINTIFF's

decision to proceed with the surgery.

190.     DEFENDANTs committed a battery by not obtaining informed consent prior to the removal of PLAINTIFF's uterus and cervix during the surgery to repair PLAINTIFF's appendix.

191.     PLAINTIFF has been compelled to incur expenses for such treatment, medicines, and other medical supplies and services.

192.     PLAINTIFF is informed and believes, and thereon alleges, that further services of said nature will be required by her in the future in an amount to be shown according to proof at trial.

193.     As a further direct and proximate result of DEFENDANTS' medical and/or professional negligence, carelessness, recklessness, and intentional conduct, PLAINTIFF has sustained, and will continue to sustain, past and future physical and emotional injuries and past and future economic and non-economic damages including but not limited to: (i) past and future physical pain and suffering, (ii) past and future emotional pain, distress, frustration, annoyance, anger, fear, worry, embarrassment, discomfort and loss of enjoyment of life; (iii) past and future wage loss; (iv) past and future medical, therapy and attendant care expenses, and (v) all other past and future economic and non-economic damages allowed by law, all in amounts to be shown according to proof at trial.

194.     The amount of PLAINTIFF's claim is presently undetermined, but will include, at a minimum, all past and future economic damages allowed by law, all past and future non-economic damages allowed by law, costs of suit, and interest as provided by law, including but not limited to, pre and post-judgement interest and punitive damages.

### COUNT IX

**(Breach of Fiduciary duty
Against all DEFENDANTS)**

195.     PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

196.     On or between December 1, 2015 and February 15, 2016, Ms. Chipoka was a patient of Abbott Northwestern. At all times relevant hereto, a physician-patient relationship existed between PLAINTIFF and all named DEFENDANTs, which DEFENDANTs had a non-delegable duty to render appropriate medical care and treatment within acceptable medical standards and within the course and scope of the specialty which they held themselves out as being specialists.

197.     At all times relevant hereto, all named DEFENDANTs had a non-delegable duty to render appropriate medical care within acceptable medical standards to PLAINTIFF.

198.     At all times relevant hereto, PLAINTIFF relied upon all named DEFENDANTs to perform their duty to render said appropriate care within the acceptable standards and within the standard of their stated expertise and/or in their respective fields of medicine. By virtue of the physician-patient relationship, Drs. Gale, Dr. Symanietz and Dr. Yost had a fiduciary duty to Ms. Chipoka to not perform acts for their own pecuniary gain that were contrary to her welfare.

199.     That a confidential and fiduciary relationship existed between plaintiff, the defendants by virtue of the trust and confidence reposed by plaintiffs in the integrity and fidelity of defendants, creating a duty of full disclosure to plaintiff of all material information and documentation regarding the circumstances surrounding the defendant's care and treatment and his true medical diagnosis and prognosis and also regarding plaintiff's treatment options.

COMPLAINT          JURY TRIAL DEMANDED - 38

200.     DEFENDANTS treatment plan was contrary to Ms. Chipoka's financial and

physical health. During this period, DEFENDANTS subjected her to a minimum of 3 CT

guided drain placement, 3 hospitalizations and a botched surgery. Ms. Chipoka was billed

for these services at or about a whopping $150,000.

201.     As a direct and proximate result of  breaches of fiduciary duties to Ms. Chipoka

she suffered bodily injury and resulting pain and suffering, mental anguish, disability,

disfigurement, and loss of the capacity for the enjoyment of life, has incurred and will

incur in the future expense of hospitalization, medical and nursing care and treatment,

and aggravation of previously existing conditions.

202.     These losses are permanent or continuing in nature, and she will suffer them in

the future. DEFENDANTS Allina, HealthPartners and ANW Hospital has a duty and a

responsibility to their patients to furnish appropriate and competent medical care.

203.     As part of their duties and responsibilities, the entity DEFENDANTS have an

obligation to establish policies and procedures and employ a medical staff who will

ensure that the appropriate quality of medical care is provided in the institution.

204.     Acting through its administrators, various boards committees and individuals,

DEFENDANTS Allina, HealthPartners and ANW Hospital are responsible for the

standards of professional practice of all who practice medicine within their walls.

205.     The injuries, damages and losses suffered by PLAINTIFF, as fully herein set forth

were the direct and proximate result of the DEFENDANTS failure to provide competent,

appropriate and quality medical care as follows: a. In failing to hire, employ and/or

otherwise associate with competent physicians, specifically DEFENDANT removed a

healthy organ and without knowledge or consent; b. In permitting and/or allowing

medical care to be rendered to and/or entrusting the care of PLAINTIFF to a healthcare provider, specifically DEFENDANTs Gale, S, Yost and Does, not sufficiently qualified by experience, education, competency, skills and/or training; c. In failing to adequately supervise, monitor, evaluate, guide and/or oversee the medical care rendered to PLAINTIFF; d. In failing to have in place proper protocols, standards and/or guidelines relating to the performance of surgical procedures, such as were performed upon PLAINTIFF; and e. In failing to properly train and retrain those responsible for performing the type of surgical procedures performed upon PLAINTIFF.

206.      PLAINTIFF demands judgment against all DEFENDANTs, jointly and severally, for compensatory damages in an amount to be determined at trial for all claims, interest, the costs of this action, attorney fees and such other and further relief to which PLAINTIFF is entitled as determined by this Court.

## COUNT X

### (Loss of Consortium
### Against all DEFENDANTS)

207.      PLAINTIFF hereby incorporates by reference each of the allegations in each of the preceding paragraphs as though fully set forth herein.

208.      On February 9, 2016 Defendants removed Ms. Chipoka's uterus and cervix without her knowledge or consent and failed to provide hormone therapy. That at all times mentioned herein PLAINTIFFs Mirriam Chipoka and Tyrone Fields, III were and now are husband and wife.

209.      Prior to the physical and emotional injuries, PLAINTIFF Tyrone Fields was able to and did perform his duties as spouse.

210.     Subsequent to the injuries and as a proximate result of the said negligence of all

DEFENDANTS and each of them, and of PLAINTIFF Mirriam Chipoka resulting

injuries PLAINTIFF Tyrone Fields, has been deprived of the services of his wife by

reason of her inability to carry on her usual duties and loss of consortium.

211.     At all relevant times, PLAINTIFF Mirriam Chipoka had a doctor-patient

relationship with DEFENDANTS. By the conduct described above, DEFENDANTS

were negligent in failing to exercise the degree of skill and care ordinarily exercised by

other surgeons under similar circumstances.

212.     As a direct and proximate result of DEFENDANT's negligence, PLAINTIFFS

have been damaged.

213.     As a result of DEFENDANT's medical malpractice, PLAINTIFF had to undergo

several surgical procedures, pay for additional medical procedures, endure pain and

suffering, emotional distress, mental anguish and inconvenience.

214.     PLAINTIFF Tyrone Fields is informed and believes, and on such information and

belief alleges that said injuries to his wife are of a permanent nature and that he will be

deprived of her services, love, affection, comfort, care, and society for a long period in

the future, including performance of necessary duties all to PLAINTIFF's damage in sum

according to proof.

215.     Before suffering these injuries, PLAINTIFF's spouse was able to and did perform

all the duties of a wife and did perform all these duties, including assisting in maintaining

the home, and providing love, companionship, affection, society, sexual relations, moral

support, and solace to PLAINTIFF including sharing the same bed and bedroom.

216.    As a direct and proximate result of the injuries, PLAINTIFF's spouse has been unable to perform the duties of a wife in that she can no longer receive or provide love and affection, have sexual intercourse become pregnant and bear a child or actively participate in family, recreational, or social activities with plaintiff and contribute to the household income.

217.    PLAINTIFF is therefore deprived and will be permanently deprived of his spouse's consortium, all to plaintiff's damage, in a total amount to be established by proof at trial.

218.    That at all times relevant herein PLAINTIFF Ms. Chipoka and PLAINTIFF Tyrone Dewayne Fields III enjoyed a close familial relationship of son and mother.

219.    As a result of the aforementioned negligence and breach of duties on the part of Defendants, PLAINTIFF, have suffered the loss of consortium of his mother and due to the loss of guidance and companionship.

220.    Due to the nature of the injuries sustained by PLAINTIFF's spouse and the severe physical and psychological strains they cause him PLAINTIFF has been damaged in a total amount to be established by proof at trial.

**JURY TRIAL DEMANDED**

PLAINTIFF respectfully demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

PLAINTIFF prays for judgment against DEFENDANTS and each of them, jointly and severally, as follows:

a.  For an award of past and future economic damages according to proof at trial;

b.  For an award of past and future non-economic damages according to proof at trial;

COMPLAINT          JURY TRIAL DEMANDED - 42

c.   For pre-and post-judgment interest as permitted by law;

d.   For all costs of suit incurred herein; and

e.   For such other and further relief as the Court deems just and proper

Dated this 21st day of March 2020.

_____

Karen Venice Bryan

COMPLAINT          JURY TRIAL DEMANDED - 43